Williams, C. J.
The contract of the parties, as shown by the pleadings, was one for the sale of goods on credit; the plaintiffs agreeing to give their commercial paper for the purchase price, payable at the times stipulated. As no time was specified in the contract for the delivery of the goods, the defendants’ obligation was to deliver them when the plaintiffs gave their commercial paper, as they agreed to do, or within a reasonable time. The petition avers that the plaintiffs were at all times ready to perform their part of the contract, and, that they requested performance by the defendant, which was by him refused. The answer denies these averments, and alleges, that the plaintiffs became, and were insolvent, and their commercial paper dishonored; and, upon this information coming to the defendant, after part of the goods had been delivered to the carrier for shipment, he stopped them in transit, resumed possession, and afterwards resold them with the other goods included in the contract, for the same price plaintiffs were to pay for them. The reply denies the insolvency of the plaintiffs, and avers that they accepted drafts drawn by defendant on them for the whole purchase price of the goods, payable in accordance with the contract.
The view which the court below took of the case, was, that the resale of the goods, as alleged in the answer, was a breach of the contract by the defendant, which gave the plaintiffs, notwithstanding their insolvency, an immediate right of action against him for damages. Hence, proof of the insolvency of the plaintiffs was excluded, as immaterial, *51 and the case was submitted to the jury as involving no inquiry except the amount of the plaintiffs’ damages.
We do not understand it to be claimed, that the defendant, upon learning of the plaintiffs’ insolvency, might not lawfully retake the goods while they were yet in the custody of the carrier; nor, that he was bound to deliver any part of the goods so long as the insolvency of the plaintiffs continued. The claim is, Jhat the right of the vendor in such case, is simply to retain possession of the property until the purchase price is paid; and therefore, a resale by him before the expiration of the credit, puts it out of his power to deliver to the first vendee, and so, constitutes a breach of the contract with him, for which he may, though insolvent, maintain a special action for damages. Whether this claim is correct or not, is the principal question in the case.
The right of stoppage in transitu, is the right of the vendor to resume possession of the goods sold, while they are in transit to the vendee, who is insolvent, or in embarrassed circumstances. Actual insolvency of the vendee is not essential. It is sufficient if before the stoppage in transitu, he was either in fact insolvent, or had, by his conduct in business, afforded the ordinary apparent evidences of insolvency. Nor is the vendor’s right abridged, or in any way affected by the fact that he has received the vendee’s bills of exchange, or other negotiable securities for the whole price, even though they have been negotiated and are still outstanding. It seems to be well settled, that when the right of stoppage in transitu is properly exercised, the effect is to restore the vendor to precisely the same position as if the' goods had never left his possession. He has the same rights Avith respect to the property, and they may be enforced in the same way. His right to intercept the goods before they reach the hands of the vendee, and his right to withhold those still in his possession,’rest upon the same just principle that the insolvent vendee cannot require the vendor to deliver the goods or perform the contract when he himself is unable to pay for them, or perform the contract on his part. To require the goods to be delivered to such vendee Avould simply result in the application of the property *52 of one man to the payment of another man’s debts. The right of the unpaid vendor, with respect to the goods, is sometimes called a lien; and, it is a lien, in the sense that the vendee, upon payment or tender of the price, but not otherwise, may recover them. But it is something more than a mere common law lien, which is only a naked right of possession. With the goods in his possession, the vendor has a special property in them, which is parcel of his original ownership. Whether the effect of the stoppage in transitu, or the retention of the goods by the vendor, on the discovery of the vendee’s insolvency, is to rescind the contract, or not, has been the subject of much discussion, and some authors say the question is not yet definitely settled. But the prevailing opinion now is, we believe, that the contract is not, necessarily rescinded, unless the parties by their conduct so treat it; that conclusion, being most favorable to the vendor, for whose protection the doctrine of stoppage in transitu was first established; for, if the exercise of the right operated to rescind the contract, the vendor would be deprived of the remedy, which it is now generally conceded he has in a proper case, upon a resale of the goods, to hold the vendee, or the assignee of his estate, for the loss sustained through his non-performance of the contract, or in consequence of a fall in the market price. And, as the stoppage does not rescind the contract of sale, it follows, that the ven-dee, or his assignee, may obtain the goods on payment of the price; or, if the vendee was able and ready to perform the contract on ids part, he may recover damages for the failure of the seller to deliver the property according to its terms. But can the vendee maintain such action if he is not able to perform? And does his insolvency at the time fixed for the delivery of the property, amount to such inability? Or, where the sale is upon credit, does a resale of the property by the vendor, before the expiration of the time of the credit, give the insolvent vendee, notwithstanding his inability to pay for the goods, a right of action against the vendor for the difference between the contract price and their market value, at the time of the resale ? As an authority sustaining the right of the vendee to maintain such an action *53 against his vendor, Bloxam v. Sanders, 4 B. & C. 941, is cited, where Bailey, J. says: “If goods are sold upon credit, and nothing is agreed upon as to the time of delivering the goods, the vendee is immediately entitled to the possession, and the right of possession and the right of property vest at once in him; but his right of possession is not absolute, it is liable to be defeated if he becomes insolvent before he obtains possession. Whether default in payment when the credit expires will destroy his right of possession, if he has not before that time obtained actual possession, and put him in the same situation as if there had been no bargain for credit, it is not now necessary to inquire, because this is a case of insolvency, and in case of insolvency the point seems to be perfectly clear. If the seller has dispatched the goods to the buyer, and insolvency occurs, he has a right in virtue of his original ownership to stop them in transitu. Why? Because the property is-vested in the buyer, so as to subject him to the risk of any accident; but he has not an indefeasible right to the possession,-' and his insolvency, without payment of the price, defeats that right. And if this be the case after he has dispatched the goods, and whilst they are in transitu, a fortiori, is it when he has never parted with the goods, and when no transitas has begun. The buyer, or those who stand in his place, may still • obtain the right of possession, if they will' pay or tender the price, or they may still act upon their right of property if anything unwarrantable is done to that right. If, for instance, the original vendor sells when he ought not, they may bring a special action against him for the injury they sustain by such wrongful sale, and recover damages to the extent of that injury; but they can maintain no action in which right of property and right of possession are both requisite, unless they have both those rights.” Still the question remains, when is the resale wrongful? And what is necessary on the part of the vendee, to enable him to maintain the action for the resale was not decided, nor does it appear to have been a question in that case. The action was trover, to the maintenance of which, the right of possession was essential.
*54 In Smith’s Reading Cases, vol. 1, pt. II, p. 1199, in the note to Lickbarrow v. Mason, 2 T. R. 63, it is said : “ Supposing the contract of sale not to be rescinded, it seems to follow, that the goods, while detained, remain at the risk of the vendee, and that the vendor can have no right to resell them, at all events until the period of credit is expired; after that period, indeed, the refusal of the vendee, or his representatives to receive the goods and pay the price, would probably be held to entitle the vendor to elect to rescind the contract.” The only authority cited in support of the note above quoted, is the case of Langford v. Tiler, Salk, 113, from an examination of which, it will be seen, that it does not meet the question. The full report of the case, which is very brief, is as follows:
“ The defendant, who was administratrix to her late husband, used to deal in tea in his.lifetime, and bought four tubs of the plaintiff at so much per tub, one of which she paid for and took away, leaving fifty pounds, in earnest for the other three; and Hoi/r, Chief Justice, ruled, 1st, That the husband was liable upon the wife’s contract, because they cohabited. 2nd, That notwithstanding the earnest, the money must be paid upon the fetching away the goods, because no other time for payment is appointed. 3d, that earnest only binds the bargain, and gives the party a right to demand; but then a demand without the payment of the money is void. 4th, That after earnest given, the vendor cannot sell the goods to another, without a default in the vendee; and therefore, if the vendee does not come and pay and take the goods, the vendor ought to go and request him; and then .if he does not come and pay, and take away the goods in convenient time, the agreement is dissolved, and he is at liberty to sell them to any other person.” The sale, it appears, was not on credit, nor, was the purchaser insolvent; nor, does the case hold that the vendor would be liable in damages, for a resale of the goods without a request made of the ven-dee to receive and pay for them, if, at the time, he was not ready and able to pay the purchase price. On the contrary, the action was by the vendor against the vendee who was the administratrix of her husband’s estate, to charge the estate *55 with her contract of purchase; and Eord Hoi/r was speaking’ of what was necessary to be done by the vendor to enable him to sue for the vendee’s breach in not making full payment. The holding, that to entitle the seller to sue, he must offer to perform and request performance by the purchaser, is in accordance with the now generally recognized rule on the subject.
The general rule is, that in contracts of bargain and sale, where there is no agreement for credit, the promise of the vendor to sell and deliver the property, and that of the purchaser to pay the contract price, are mutually dependent, and neither party is bound to perform, without contemporaneous performance by the other. Payment, or tender of the price, is the condition upon which the purchaser can require' delivery of the property; and delivery or tender by the seller, is just as essential on his part if he would sue for the price, or for damages for its non-payment. If both parties are unable to perform, neither can maintain an action against the other; and therefore, while it is necessary for the vendor, if he would sue, to offer performance on his part, he is in a position to defend, without doing so, if the vendee is is not able to perform. In Reader v. Knatchel, 5 T. R. 218, an application was made of the- rule, which is much in point. The plaintiff declared upon an agreement by the defendant, to deliver to him a quantity of Manchester cottons. The defense was, that after the making of the contract, the plaintiff had compounded with his creditors. Mr. Justice Butuee. directed the jury, “that if they believed the plaintiff was really in such a situation as to be unable to pay for the goods, that was a good defense in point of law to the action; and the jury accordingly found a verdict for the defendant.”
When the sale is upon credit, it is one of the implieff conditions of the contract that the vendee shall keep his credit good; h'is promise to pay at a future day, involving an engagement on his part that he will remain, and then be, able to pay; which engagement is broken when he becomes insolvent, and unable to pay, and hence, the right of the vendor to then stop performance of the contract on his part. Nor is the rule va *56 ried by the fact that the vendee has given his notes or bills, or other securities for the price, payable at the end of the time for which the credit is allowed. The vendor, in such case, incurs no liability by not delivering the property, unless the vendee pay, or tender the contract price. But in order to sue the vendee, he should offer to deliver according to the contract. Such is the scope of the rule laid down in Mining Co. v. Brown, 124 U. S. 385, where it is held: “The insolvency of the vendee in a contract for the sale and future delivery of personal property in installments, payment to be made in notes of the vendee as each installment is delivered, is sufficient to justify the vendor for refusing to continue the delivery, unless payment be made in cash; but it does not absolve him from offering to deliver the property in performance of the contract if he intends to hold the purchasing party to it: he cannot insist upon damages for non-performance hy the insolvent without showing performance on his own part, or an offer to perform, with ábility to make the offer good.”
The rule must work both ways. The rights and obligations of the vendor and vendee are correlative. If the insolvency of the vendee, is sufficient to justify the vendor in refusing to deliver the property, unless payment be made in cash, it follows, that the vendor incurs no liability by his refusal, and therefore, no right of action accrues to the ven-dee, unless payment be made by him. And if the vendor cannot insist upon damages for the vendee’s non-performance, without showing an offer on his part with the ability to perform, so, neither can the vendee, if he is without the ability to perform, recover from the vendor.,. The observations of GHOKSON, J., in Benedict, v. Schaettle, 12 Ohio St. 520-521, are in point, and are in harmony with this view of the subject. He says: “If the true principle of the right of stoppage in transitu, be found in that certainly just rule of mutual contract, by which either party may withhold performance, on the other becoming unable to perform, on his part; if the foundation of the rule be a just lafci on the goods for the price, until delivered, an equitable lien adopted for the purposes of substantial justice, then it is the ability to perform *57 the contract — to pay the price — which is the material consideration. If there be a want of ability, it can make no difference in justice or good sense, whether it was produced by causes, or shown by acts, at a period before or after the contract of sale. Substantially, to the vendor who is about to complete delivery, and abandon or lose his proprietary lien, the question is, can the vendee perform the contract on on his part; has he, from insolvency, become unable to pay the price?” And in another part of the opinion he further says: “The rights of a fair vendee will be sufficiently protected by giving him an indemnity when the right of stoppage in transitu is exercised upon rumor or suspicion without any foundation in fact, and by depriving the vendor, in all cases, of any chance of speculating upon the goods, by requiring them to be delivered or accounted for to the vendee, or his assignee, on the payment or tender of the agreed price.”
But, it is contended, that while the vendor may refuse to deliver the property to the insolvent vendee, he is obliged to keep it for the vendee until the time of the credit expires; and, if he resell before that time, the vendee may have his action for damages.
When, by the contract, the property is to be delivered at a future day, and the vendor sells it to another before that time arrives, the vendee, being able to perform, may have an immediate action; for the vendor, by thus disabling himself from performing by delivery at the proper time, commits a breach of the contract, and the vendee need not wait until the time for the delivery arrives. But that rule has no application here. The obligation of the vendor, under a contract like that between the parties in this case, is to deliver the goods at the time stipulated in the agreement, which is at once, upon the receipt or tender of the purchaser’s commercial paper, or within a reasonable time; not at the time to which the credit is extended. The right of the vendee, is to receive the goods at the time the vendor contracts to deliver them, and he is not bound to receive them at any other time. The breach, therefore, on the part of the vendor, if there be one, consists in his failure to deliver the *58 goods according to the contract, and occurs at that time, and not upon a resale subsequently made; and the vendee’s cause of action arises, if at all, upon the failure to deliver, and not on the resale. In the case now before us, the aver-ments of the defendants’ answer, which on the trial he was not permitted to prove, though he offered to do so, show that at the time the goods were to have been delivered, according to the contract of sale, the plaintiffs were insolvent, and their paper dishonored, so that, the condition upon which their right to the goods depended, had not been performed by them, and they were without the necessary ability to perform the same. Upon what just principle can the seller in such a case, be required to hold the goods until the expiration of the credit? It is true that, at that time, the vendee may again be solvent, and able to pay. There is no presumption, or assurance that he will. If any presumption arises, it is rather, that the insolvency will continue, which is more in accordance with the experience of the commercial world. But, as we have seen, it is part of the vendee’s engagement, that he will maintain his credit, which is broken by his insolvency. And it would be unjust, to require the vendor, to sustain the loss, resulting from the destruction or deterioration of the goods in the meantime, which, in many instances must ensue if the seller is compelled to keep the goods shut up, and take the risk of the future solvency of the buyer. The injustice of such a requirement is conceded where the goods are of a perishable nature; and the vendor, it is now settled, is not obliged to keep goods of that character until the termination of the credit. In the notes to Lickbarrow v. Mason, in Smith’s Leading Cases, vol. 1, pt. II, p. 1199, it is said, “But what, it will be said, if the goods be of so perishable a nature that the vendor cannot keep them until the time of credit has expired? In such a case it is submitted that courts of law having originally adopted this doctrine of stoppage in transitu from equity, would act on equitable principles by holding the vendor invested with an implied authority to make the necessary sale.” It is insisted, however, that the right of sale in such cases, constitutes an exception to the rule. In our *59 opinion, the reasons upon which the exception rests, if it be such, should make the exception the general rule. The value of many kinds of merchandise, not perishable, depends largely upon their being in the market at the appropriate seasons, and to supply temporary demands; and if not available for those purposes, at the proper time, they become comparatively worthless, or so reduced in value as to entail great loss, which may be less only in degree, though greater in amount, than where the goods are perishable; and it is no more just or equitable, to subject the vendor to the loss in the one case, than in the other. The right of resale, ought not, we think, be made to depend upon the degree or extent of the loss that must ensue, if it should be denied. It rests upon a different principle, and grows out of the failure of the vendee to keep his engagement. Not that the contract is thereby rescinded, for that would defeat the vendor’s remedy for damages upon resale after due notice; but, that he may elect to treat the agreement for the credit as at an end, on account of the vendee’s default. We see no good reason for holding that the rights of the seller are any the less where the sale is upon credit, and the property is retained by him on account of the buyer’s insolvency, than they would be if the sale were for cash, and the vendee was unable to pay the price agreed upon. In either case the incapacity of the ven-dee to perform his part of the agreement, and insolvency is incapacity, warrants the vendor in withholding performance on his part.
We are therefore of opinion the trial court erred in excluding the evidence of the plaintiffs’ insolvency, and in charging the jury as shown in the statement of the case; and also in refusing the instruction'requested by the defendant therein contained. Counsel have argued a question relating to the charge of the court on the measure of damages; but as no exception was taken to the charge on that subject it will not be further noticed. For the errors mentioned above,

Thefidgments below are reversed and the cause remanded for further proceedings.